Dear Mr. Frappier:
This is in response to your request for an opinion as follows:
 A. May a physician require, as a condition of the physician/patient relationship, that the patient receive only drugs dispensed directly from the physician's office?
 B. May a physician give a written or telephone phone prescription to a patient, but limit the patient to having the prescription filled only at a particular pharmacy in which the physician has a financial interest, or from which he receives financial benefit. This limitation of choice of pharmacy is by explicit instruction, or by the physician's refusal to call in or authorize the prescription at another pharmacy?
 C. May a physician's unlicensed office attendant, or a pharmacist directly employed by the physician, prepare and label medications for patients and dispense the medications to the patients upon the instruction of the physician?
 D. May a physician label the medication dispensed by him to his patients with a recognized brand-name, when in fact he is dispensing a generic equivalent of the brand-name drug?
 A.
NONOPTIONAL PHYSICIAN DISPENSING
We find no provision of Missouri law which either expressly permits or expressly prohibits the practice described in your first question. However, a physician who requires, as a condition of the physician-patient relationship, that the patient accept only drugs dispensed directly from the physician's office, and refuses to provide a prescription which may be filled at a pharmacy, arguably is in violation of the Missouri Antitrust Law, Chapter 416, RSMo 1978.
Section 416.031 provides in relevant part:
 1. Every contract, combination or conspiracy in restraint of trade or commerce in this state is unlawful.
 2. It is unlawful to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce in this state.
As used in the Missouri Antitrust Law, the phrase "trade or commerce" means any economic activity involving or relating to any commodity or service, Section 416.021(4), and "service" means any kind of activity performed in whole or in part for financial gain, Section 416.021(3).
Section 416.141 states: "[The Missouri Antitrust Law] shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes."
Such "comparable federal antitrust statutes" are found in the Sherman Antitrust Act, 15 U.S.C.A. 67;§ 1-7, which provides in relevant part:
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, . . . is declared to be illegal. . . . [15 U.S.C.A. 67; 1]
 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, . . . shall be deemed guilty of a felony, . . . [15 U.S.C.A. § 2]
The federal judicial interpretations of the Sherman Act,15 U.S.C.A. 67;§ 1-7, include prohibitions against tying arrangements. In Northern Pacific Railway Company v. United States, 356 U.S. 1
(1958), the United States Supreme Court stated:
 [A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier. Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed. Indeed, "tying agreements serve hardly any purpose beyond the suppression of competition." . . . They deny competitors free access to the market for the tied product, not because the party imposing the tying requirements has a better product or a lower price but because of his power or leverage in another market. At the same time buyers are forced to forego their free choice between competing products. For these reasons "tying agreements fare harshly under the laws forbidding restraints of trade." . . . They are unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a "not insubstantial" amount of interstate commerce is affected. . . . Of course where the seller has no control or dominance over the tying product so that it does not represent an effectual weapon to pressure buyers into taking the tied item any restraint of trade attributable to such tying arrangements would obviously be insignificant. . . . [356 U.S. at 5-6]
Services, as well as tangible items or commodities, can be the "tying product." Cantor v. Detroit Edison Company,428 U.S. 579 (1976). Professional services in particular are "trade or commerce" for purposes of the antitrust law. National Society ofProfessional Engineers v. United States, 435 U.S. 679 (1978). See, also, Section 416.021(3) and (4).
We believe that the professional services of a physician (diagnosis of an abnormality and formulation of treatment regimen) and the drugs which the physician determines should be self-administered by the patient as a part of the therapy can be considered separate "products" in the sense of the antitrust law. We also believe that through the "product" of professional services a physician could very well exercise economic power over an appreciable number of buyers (i.e., patients) of the separate product (i.e., prescription drugs) sufficient to constitute an unreasonable restraint of trade in the sale of these pharmaceutical products.
Moreover, nonoptional physician dispensing of prescription drugs would appear to be proscribed by Opinion 8.06 published in Current Opinions of the Judicial Council of the American Medical Association — 1982, which states in relevant part:
 Patients are entitled to the same freedom of choice in selecting who will fill their prescription needs as they are in the choice of a physician. (See 9.05). The prescription is a written direction for a therapeutic or corrective agent. A patient is entitled to a copy of the physician's prescription for drugs, eyeglasses, contact lenses, or other devices as required by the Principles of Medical Ethics and as required by law. The patient has the right to have the prescription filled wherever the patient wishes.
Therefore, we believe that nonoptional physician dispensing of prescription drugs may in appropriate circumstances be deemed "misconduct" for which disciplinary proceedings may be instituted against such physician by the State Board of Registration for the Healing Arts pursuant to Section 334.100.2(5), RSMo Supp. 1981.
 B.
PHYSICIAN SELECTED PHARMACY
A physician who is motivated to direct or influence a patient to have a drug prescription filled at a pharmacy for his own gain engages in conduct substantially equivalent to that discussed in answer to your first question. In our view, the same potentiality for application of the Missouri Antitrust Law exists.
Such practice would also appear to be proscribed by Opinion 8.06 of the Judicial Council of the American Medical Association, which contains these provisions:
 A physician may own or operate a pharmacy if there is no resulting exploitation of patients.
* * *
 Physicians should not discourage patients from requesting a written prescription or urge them to fill prescriptions at an establishment which has a direct telephone line or which has entered into a business or other preferential arrangement with the physician with respect to the filling of the physician's prescription.
If a physician may personally profit from a patient's use of a particular pharmacy for the filling of a prescription and if the physician controls the selection of this pharmacy in some manner, we believe the State Board of Registration for the Healing Arts could regard this as proscribed conduct for purposes of invoking the disciplinary sanctions of Section 334.100.2.
 C.
PHYSICIAN DELEGATION OF DISPENSING FUNCTION
The subject of permissible and impermissible delegation by a physician of the preparation, labeling and dispensing of prescription drugs was addressed in our recent Opinion No. 44, issued May 24, 1982, a copy of which is enclosed. Therein we concluded that a physician may not delegate either the preparation or dispensing of prescription drugs to a person not licensed as a pharmacist or as a physician, but may allow an unlicensed person to prepare and affix, under his supervision, the label required by law on a prescription he dispenses in accordance with the provisions of Section338.059, RSMo 1978.
 D.
LABELING OF DISPENSED DRUG CONTAINER
We believe that a physician dispensing a generic equivalent drug to his patient in a container bearing a label indicating that the drug is a trade or brand name drug is in violation of Section338.059, RSMo 1978, which provides in part:
 1. It shall be the duty of a licensed pharmacist or a physician to affix or have affixed by someone under his supervision a label to each and every container in which is placed any prescription drug upon which is typed or written the following information:
* * *
 (7) The exact name and dosage of the drug dispensed;
* * *
 (9) When a generic substitution is dispensed,
[in accordance with Section 338.056] the name of the manufacturer or an abbreviation thereof shall appear on the label. . . . [Emphasis added].
We do not think that the "exact name" of a therapeutically equivalent generic drug (e.g., chlordiazepoxide) is the same as, or can be interchanged with, that of its trade or brand name counterpart (e.g., Librium). Also, we think that when a physician prescribes a trade or brand name drug, and then dispenses a drug based on this prescription, he may not substitute a "therapeutically equivalent generic drug" (Section 338.056, RSMo 1978) without indicating on the container label the name, or abbreviation of the name, of the manufacturer of the substituted drug.
CONCLUSION
It is the opinion of this office that:
(1) A physician who requires that his patient accept drugs dispensed by the physician and refuses to provide the patient a prescription for such drugs which can be filled at a pharmacy of the patient's choice may be in violation of the Missouri Antitrust Law and Section 334.100.2(5), RSMo Supp. 1981.
(2) A physician who instructs or requires a patient to use a pharmacy in which the physician has a financial interest to fill a drug prescription may be in violation of the Missouri Antitrust Law and Section 334.100.2(5), RSMo Supp. 1981.
(3) A physician may not delegate to any person other than a licensed physician or pharmacist the preparation or dispensing of a prescription drug, but may allow an unlicensed person to prepare and affix, under his supervision, the label for such prescription.
(4) A physician may not prescribe a drug by its brand or trade name and then dispense a therapeutically equivalent generic drug in a container labeled with the brand or trade name.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosure: Opinion No. 44 (1982)